*Formatted for Electronic Distribution*                                          *For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

In re:

    **Mark A. Wise and**                                        **Chapter 7 Case**
    **Cynthia D. Wise,**                                        **# 10-11140**
            **Debtors.**

*Appearances:  David W. Lynch, Esq.*                          *Kevin Purcell, Esq.*
            *Colchester, VT*                                 *Albany, NY*
            *For the Debtors*                                 *For the United States Trustee*

### MEMORANDUM OF DECISION
### DENYING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE

The United States Trustee has filed a motion to dismiss the Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1),[1] based upon a presumption of abuse under § 707(b)(2) and the totality of the circumstances under § 707(b)(3)(B).  For the reasons set forth below, the Court denies the United States Trustee's motion to dismiss.

### JURISDICTION

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and declares it to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### PROCEDURAL BACKGROUND

Mark and Cynthia Wise (the "Debtors") filed a voluntary Chapter 7 petition on August 27, 2010 (doc. # 1).  On the same date, the initial § 341 meeting of creditors was scheduled for October 6, 2010 (see docket entry dated August 27, 2010).  The § 341 meeting of creditors was continued to November 3, 2010, and December 1, 2010 (see docket entries dated October 6, 2010, and November 4, 2010), and has since been subsequently continued and is not yet closed (see docket entry dated July 12, 2011).

On December 3, 2010, the United States Trustee filed a statement pursuant to § 704(b)(1)(A) indicating that the United States Trustee had determined that the Debtors' case was presumed to be an abuse under § 707(b) (doc. # 13).  On the same date, the United States Trustee filed the instant motion to dismiss the Debtors' Chapter 7 case (doc. # 11).  The Debtors filed an objection to the United States

---

[1] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

Trustee's motion to dismiss on January 18, 2011 (doc. # 16), including an affidavit by the Debtors (doc. # 16-1).

On January 24, 2011, the Court entered an order setting a briefing schedule on the motion and scheduling a hearing to be held on May 3, 2011, for oral argument and evidence (doc. # 20).  The Court subsequently entered an amended order continuing the hearing to June 2, 2011 (doc. # 25).

On February 4, 2011, the parties filed a joint stipulation of facts and statement of issues in accordance with the briefing schedule (doc. # 23).  On March 25, 2011, the United States Trustee filed a memorandum of law in support of the motion to dismiss (doc. # 27), the Debtors filed a memorandum of law in opposition to the motion to dismiss on April 22, 2011 (doc. # 28), and the United States Trustee filed a reply memorandum on April 29, 2011 (doc. # 28).

On May 26, 2011, the Court continued the hearing on the motion to dismiss to July 5, 2011 (doc. # 30).  The Court entered an order on June 29, 2011, narrowing the issues to be presented at the evidentiary hearing (doc. # 33).  On July 5, 2011, the Court held an evidentiary hearing at which Debtor Mark A. Wise ("Mr. Wise") presented testimony.  At the conclusion of the hearing, the Court took the motion to dismiss under advisement.

**FINDINGS OF FACT**

Based upon the record in this case, including the parties' joint stipulation of facts incorporating the Debtors' affidavit in opposition to the motion to dismiss (doc. # 23, pp. 1–2; doc. # 16-1), the Court makes the following findings of fact:

1.  From 2006 to 2009, the Debtors' gross income, as stated on Line 22 of IRS Form 1040, had decreased 62.6% as follows:

    a.    the Debtors' 2006 gross income was $288,533.00;

    b.    the Debtors' 2007 gross income was $190,277.00;

    c.    the Debtors' 2008 gross income was $93,015.00; and

    d.    the Debtors' 2009 gross income was $108,016.00.

2.  The Debtors incurred tax debt in the tax years 2006 and 2007, and have been in contact with the Internal Revenue Service to make payments on the back taxes.  The Debtors paid $140.00 per month for the past four years on the federal tax debt.

3.  Debtor Cynthia D. Wise ("Mrs. Wise") has been a homemaker for nine years.

4.  In 2008, the Debtors traded in two vehicles, a BMW and a Honda, to purchase a more affordable Toyota, which the Debtors now need for personal use.  The Debtors also sold a Chevrolet.  By engaging in the transactions, the Debtors removed from their expenses car payments of $915.00 for the BMW and $775.00 for the Chevrolet.  The Debtors liquidated retirement savings in the

2

amount of $3,000.00 to pay debt owed on the BMW and Honda, in order to trade in the vehicles.

5.  In March 2010, the Debtors relocated from California to Vermont in order to find employment. The Debtors spent $17,000.00 from their savings in connection with the move.

6.  Mr. Wise's employer reimbursed him $7,692.12 for out-of-pocket expenses incurred while traveling for employment or in connection with the move from California to Vermont, as follows:

    a.  $5,360.00 on April 2, 2010, for relocation expenses;

    b.  $157.67 on May 28, 2010, for meals during work-related travel;

    c.  $498.45 on June 23, 2010, for meals during work-related travel;

    d.  $500.00 on July 9, 2010, for health care costs;

    e.  $180.00 on July 16, 2010, for cell phone use;

    f.  $564.00 on July 27, 2010, for meals during work-related travel; and

    g.  $432.00 on July 30, 2010, for meals during work-related travel.

7.  The Debtors were forced to abandon home ownership in California because of their reduction in income caused by Mr. Wise's loss of employment.

8.  When the Debtors arrived in Vermont, they had only one weekend to find affordable housing, and found suitable housing for their family in Essex, Vermont. The Debtors looked at five homes for rent, four with prices over $2,000.00 per month and one at $1,900.00. They found no other three-bedroom houses for their family of four that were reasonably located near the airport where Mr. Wise is employed. The Debtors had little choice in housing and had to make a quick move. In March 2010, the Debtors signed a one-year lease for a condominium with an estimated value of $285,000.00, with rent at $2,000.00 per month plus utilities. The dwelling is modest given the value of the property, the Debtors have no special amenities associated with the condominium, and are not splurging on housing at the expense of their creditors (see doc. # 23, ¶ 7; doc. # 16-1, ¶ 12). The Debtors did not enter into the lease anticipating filing for bankruptcy, and they cannot afford to move from their current residence, even if they could find suitable housing for lower rent.

9.  The Debtors have substantially changed their lifestyle in response to their diminished economic circumstances.

10.  The Debtors did not consider filing for bankruptcy until it was suggested by a credit counselor at Consumer Credit Counseling of New Hampshire and Vermont in June 2010, which prompted them to consult an attorney.

11.  Since the Debtors are above-median-income debtors, they completed a means test form to determine their "monthly disposable income" for purposes of this bankruptcy case.

12.  The Debtors listed among the deductions on their means test form (doc. # 1) and amended means

test form (doc. # 15) the following:

    a.    $496.00 on Line 24, for a vehicle that the Debtors owned outright and that had no lien or loan payment due;

    b.    $2,967.00 on Line 42(a), attributable to the Debtors' mortgage payments on their residential property in California, which the Debtors disclosed as surrendered on their Statement of Intention; and

    c.    $110.07 on Line 42(b), for a Yamaha ATV, which the Debtors disclosed as surrendered on their Statement of Intention.

13.    The Debtors inadvertently counted as income certain one-time payments and reimbursements and overstated their income on the means test form as follows:

    a.    $4,753.85 for vacation pay from Mr. Wise's former employer, which was a one-time payment that the Debtors will not continue to receive; and

    b.    $5,360.00 for a moving reimbursement on April 2, 2010, which was erroneously listed as income.

14.    The Debtors disclosed on schedule I (doc. # 1) and amended schedule I (doc. # 7) monthly income of $5,931.76, and indicated on Line 17 that the Debtors "[a]nticipate raise in income of 12% in near future."

15.    The Debtors disclosed on schedule J (doc. # 1) average monthly expenses of $5,758.00 and monthly net income of $173.76, and listed, inter alia, the following monthly expenses:

    a.    $425.00 on Line 2(d), for telephone, cable, and internet;

    b.    $120.00 on Line 6, for laundry and dry cleaning; and

    c.    $97.00 on Line 11(b), for life insurance.

16.    The expenses listed on amended schedule J reflect average household expenses incurred at the time of filing and not out-of-pocket, business-related expenses incurred while traveling for employment or in connection with the move from California to Vermont.

17.    In January 2011, the Debtors also owned outright a 2000 Jeep.  The Debtors needed both the Jeep and the Toyota, since one vehicle was for Mr. Wise's work-related travel and the other was for Mrs. Wise's transportation needs associated with meeting household and children's needs.

**DISCUSSION**

1.    **The United States Trustee's Claim Based upon the Presumption of Abuse: § 707(b)(2)**

The Court turns first to the United States Trustee's argument that the Debtors' Chapter 7 case should be dismissed for abuse under § 707(b)(1), based upon a presumption of abuse under § 707(b)(2).

Under § 704(b)(1)(A), the United States Trustee "shall review all materials filed by the debtor and,

not later than 10 days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b)."  11 U.S.C. § 704(b)(1)(A).  Under § 704(b)(2), the United States Trustee "shall, not later than 30 days after the date of filing a statement under paragraph (1), either file a motion to dismiss or convert under section 707(b)."  11 U.S.C. § 704(b)(2).

In the instant case, the initial § 341 meeting was scheduled for October 6, 2010 (see docket entry dated August 27, 2010).  On December 3, 2010, the United States Trustee filed a § 704(b)(1)(A) statement indicating that the Debtors' case is presumed to be an abuse under § 707(b) (doc. # 13), and filed a motion to dismiss pursuant to § 707(b)(1), (2), and (3) (doc. # 11).  The most recent § 341 meeting was held on July 6, 2011 (see docket entry dated July 12, 2011).

The Debtors argue that, since the United States Trustee failed to file a § 704(b)(1)(A) statement within 10 days of the first § 341 meeting of creditors on October 6, 2010, the United States Trustee is time-barred from moving to dismiss under § 707(b)(2) (doc. # 16, pp. 6–7; doc. # 28, pp. 1, 3–8).  The United States Trustee argues that the § 704(b)(1)(A) statement may be filed any time within 10 days of the conclusion of the § 341 meeting, rather than the first date set, and argues in the alternative that failure to comply with § 704(b)(1)(A) should not preclude a motion to dismiss under § 707(b)(2) (doc. # 27, pp. 6–10; doc. # 29, pp. 2–3).

Some courts that have considered the issue have held that the United States Trustee must file the § 704(b)(1)(A) statement within 10 days of the date of the initial § 341 meeting.  See In re Close, 353 B.R. 915 (Bankr. D. Kan. 2006), aff'd, Turner v. Close (In re Close), 384 B.R. 856 (D. Kan. 2008); In re Clark, 393 B.R. 578 (Bankr. E.D. Tenn. 2008); In re McClellan, 2007 Bankr. LEXIS 4666 (Bankr. D. Nev. July 16, 2007).  Other courts have held that the United States Trustee may file the § 704(b)(1)(A) statement any time before the date that is 10 days after the conclusion of the § 341 meeting.  See In re Molitor, 395 B.R. 197 (Bankr. S.D. Ga. 2008); Reed v. Anderson (In re Reed), 422 B.R. 214 (C.D. Cal. 2009); In re Granger, 2008 Bankr. LEXIS 3361, 2008 WL 5157843 (Bankr. D. N.M. Sept. 22, 2008); In re Sloan, 2007 Bankr. LEXIS 4615 (Bankr. W.D. Okla. Feb. 6, 2007).  One court also held that failure to comply with § 704(b)(1)(A) does not preclude a motion to dismiss under § 707(b)(2).  See In re Cadwallder, 2007 Bankr. LEXIS 2260, 2007 WL 1864154 (Bankr S.D. Tex. June 28, 2007).

This Court finds the Debtors' argument that the United States Trustee was required to file the § 704(b)(1)(A) statement within 10 days of the initial § 341 meeting of creditors on October 6, 2010, to be a more sound reading of the Bankruptcy Code requirement.  Section § 704(b)(1)(A) requires the United States Trustee to file the statement of presumed abuse "not later than 10 days after the date of the first meeting of creditors."  11 U.S.C. § 704(b)(1)(A).  By its plain meaning, the provision refers to a single

and easily discernible date, and based upon the rationale other courts have used in reaching this

determination, the most sensible conclusion as to the date to which it refers is to the first date set for the §

341 meeting of creditors.  See In re Close, 353 B.R. at 918; see also In re McClellan, 2007 Bankr. LEXIS

4666 at *3.  Further, § 704(b)(1)(A) "establishes a process with time limits; failure to follow the process

prevents the [United States Trustee] from obtaining dismissal on the ground of presumed abuse."  In re

Clark, 393 B.R. at 583.  In the instant case, the United States Trustee failed to file the § 704(b)(1)(A)

statement of presumed abuse within 10 days of the first date set for the § 341 meeting of creditors on

October 6, 2010.  Accordingly, the United States Trustee's motion to dismissed for abuse under §

707(b)(1), based upon a presumption of abuse under § 707(b)(2), is time-barred.

**2.      The United States Trustee's Claim Based upon the Totality of the Circumstances: § 707(b)(3)**

The Court next turns to the United States Trustee's argument that the Debtors' Chapter 7 case

should be dismissed for abuse under § 707(b)(1), based upon the criteria set forth in § 707(b)(3)(B).

Section 707(b)(1) states, in relevant part, that

> After notice and a hearing, the court, on its own motion or on a motion by the United States
> trustee . . . may dismiss a case filed by an individual debtor under this chapter whose debts
> are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of
> the provisions of this chapter.

11 U.S.C. § 707(b)(1).  Section 707(b)(3) states that:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the
> provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does
> not arise or is rebutted, the court shall consider—
>
> (A)      whether the debtor filed the petition in bad faith; or
>
> (B)      the totality of the circumstances (including whether the debtor seeks to reject a
>          personal services contract and the financial need for such rejection as sought by the
>          debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).  The United States Trustee bears the burden of proving abuse under § 707(b)(3) by

a preponderance of the evidence.  See In re Perelman, 419 B.R. 168, 177 (Bankr. E.D.N.Y. 2009).  If the

United States Trustee establishes a prima facie case, the burden shifts to the Debtors to go forward with

sufficient evidence to controvert the prima facie case.  See id.

The United States Trustee does not allege that the case should be dismissed on the basis that the

Debtors filed the petition in bad faith (see doc. # 11, ¶ 42) ("[w]hile perhaps not rising to the level of 'bad

faith' required by 11 U.S.C. § 707(b)(3)(A) . . .").  Rather, the United States Trustee argues that the case

should be dismissed on the basis that the totality of the circumstances of the Debtors' financial situation

demonstrates abuse under § 707(b)(3)(B) (doc. # 11, ¶¶ 36–45; doc. # 27, pp. 16–18; doc. # 29, pp. 6–7).

Prior to the enactment of BAPCPA, the Second Circuit set forth a totality of the circumstances test

to determine whether substantial abuse existed under § 707(b).  Kornfield v. Schwartz (In re Kornfield),

6

164 F.3d 778 (2d Cir. 1999). The threshold issue in Kornfield was whether the debtors had the ability to repay their debts. Id. at 781. The Second Circuit noted that courts were split as to whether that factor was dispositive, or whether other factors should also be considered. Id. The bankruptcy court had considered both the debtors' ability to pay and a number of potentially mitigating or aggravating factors. In re Carlton and Kornfield, 211 B.R. 468, 478 (Bankr. W.D.N.Y. 1997), aff'd sub nom., Kornfield v. Schwartz (In re Kornfield), 214 B.R. 705 (W.D.N.Y. 1997), aff'd, Kornfield, 164 F.3d 778. The Second Circuit agreed with the bankruptcy court that the debtors' petition did not satisfy the totality of the circumstances test regardless of which variation was applied, and affirmed dismissal of the case. Kornfield, 164 F.3d at 784.

Subsequent to the enactment of § 707(b)(3) as part of BAPCPA, this Court and others within the Second Circuit have continued to find Kornfield to be the proper standard for assessing the totality of the circumstances under § 707(b)(3). See In re Darling, 2008 Bankr. LEXIS 1807, *3, 2008 WL 2278901, *1 (Bankr. D. Vt. May 19, 2008); see also In re Fitzgerald, 418 B.R. 778, 782 (Bankr. D. Conn. 2009); In re Colgate, 370 B.R. 50, 55 (Bankr. E.D.N.Y. 2007); In re Roberts, 2011 Bankr. LEXIS 2087, *8–9, 2011 WL 2118857, *3 (Bankr. D. Conn. May 25, 2011). Courts applying Kornfield have employed a two-part test, "looking first to whether the [d]ebtor has the ability to pay a substantial dollar amount or percentage of [his or] her unsecured debts, and then to any other relevant circumstances to determine whether there were any mitigating or aggravating factors." In re Fitzgerald, 418 B.R. at 782; see also In re Colgate, 370 B.R. at 55–56.

**A.      *Do the Debtors Have the Ability to Pay?***

Under the first prong of this test, courts look to what a debtor would be able to pay creditors under a hypothetical Chapter 13 plan when considering the debtor's ability to pay. See In re Fitzgerald, 418 B.R. at 783. Thus, this Court will begin by scrutinizing the Debtors' actual income and expenses to determine their ability to pay. See id.

On the income side, the Debtors disclosed on schedule I (doc. # 1) and amended schedule I (doc. # 7) monthly income of $5,931.76, and indicated on Line 17 that the Debtors "[a]nticipate raise in income of 12% in near future" (see Findings of Fact ¶ 14, supra). At the evidentiary hearing, Mr. Wise testified that he did receive a raise of approximately 12% in December 2010, and that he does not currently anticipate any further increase in his salary. The Debtors provided an amended budget, which was admitted into evidence as Debtors' Exhibit D, showing gross monthly income of $9,583.60 less taxes of $2,404.52 (Debtors' Ex. D), for a monthly net income of $7,179.08. The Debtors also introduced weekly paystubs for Mr. Wise, which were admitted as Debtors' Exhibit C, showing gross weekly earnings of $2,211.60 and taxes of $554.89 for the weeks of June 15, 2011, and June 22, 2011 (Debtors' Ex. C). Mr.

Wise testified that the amounts listed on the amended budget for gross monthly income and taxes were accurate. The United States Trustee elicited no testimony to call this into question.

The United States Trustee alleged that Mr. Wise receives an average of $640.00 per month in income for reimbursement of expenses not listed on schedule I (doc. # 11, ¶ 42). The Debtors responded that the reimbursement they received was primarily for moving expenses in March 2010, and they received some additional reimbursement for work-related travel (doc. # 16, p. 11). Mr. Wise's employer reimbursed him for $7,692.12 for out-of-pocket expenses incurred while traveling for employment or in connection with the move from California to Vermont, as follows: $5,360.00 on April 2, 2010, for relocation expenses; $157.67 on May 28, 2010, for meals during work-related travel; $498.45 on June 23, 2010, for meals during work-related travel; $500.00 on July 9, 2010, for health care costs; $180.00 on July 16, 2010, for cell phone use; $564.00 on July 27, 2010, for meals during work-related travel; and $432.00 on July 30, 2010, for meals during work-related travel (see Findings of Fact ¶ 6, supra). The Debtors further responded that the reimbursement expenses were not listed on schedule J as monthly expenses because they were not part of the household expenses, nor were they included in the Debtors' income (doc. # 16, p. 11). At the evidentiary hearing, Mr. Wise credibly testified that his employer has not issued him any significant reimbursement of expenses since July 2010 and, to the extent he is reimbursed, it is "dollar for dollar" for what he spends on business travel and meals and a de minimis cell phone allowance. The United States Trustee did not elicit any testimony indicating that Mr. Wise receives $640.00 per month of additional income attributable to employer reimbursement.

The Court finds that under these circumstances, where the Debtors were reimbursed pre-petition for moving expenses and work-related travel unrelated to household expenses and are not receiving regular ongoing reimbursement in this amount from Mr. Wise's employer, there is no basis for a finding that the Debtors' income actually increased by $640.00 per month. Based upon the record and credible testimony of Mr. Wise, for purposes of this motion, the Court finds the Debtors' current monthly income to be $7,179.08.[2]

On the expense side, the Debtors disclosed on schedule J (doc. # 1) average monthly expenses of $5,758.00 (see Findings of Fact ¶ 15, supra). The expenses that are the subject of dispute in this contested matter are set forth in the chart below, including the Debtors' figure for each such expense (both as originally scheduled and as later set forth in the amended budget), the figure the United States Trustee asserts should be substituted, and the Court's determination of the reasonable allowance of each such

---

[2] At the evidentiary hearing, the parties explored the issue of whether the Debtors could increase their income, either from Mrs. Wise obtaining employment outside of the home (see Findings of Fact ¶ 3, supra), or from Mr. Wise obtaining additional employment as a consultant. However, Mr. Wise provided credible and persuasive testimony that neither option was viable.

8

expense and amount disallowed for the purposes of this motion.

| Disputed Expense | Amount in Schedule J (Doc. # 1) | Amount in Amended Budget (Debtors' Ex. D) | Amount Alleged by United States Trustee | Reasonable Amount as Determined by Court | Amount Disallowed by Court |
|---|---|---|---|---|---|
| Laundry and dry cleaning | $120.00 | $120.00 | $60.00 | $60.00 | $60.00 |
| Life insurance | $97.00 | $97.08 | $48.54 | $48.54 | $48.54 |
| Rent | $2,000.00 | $2,019.08 | ---- | $2,018.00 | $1.08 |
| Electricity and heating fuel | $300.00 | $249.00 total *$125.00 (electric) $124.00 (gas)* | ---- | $249.00 | $0.00 |
| Telephone, cable, and internet | $425.00 | $439.00 total *$169.00 (telephone, cable, and internet) $270.00 (cell phone and business cell)* | $219.50 | $439.00 | $0.00 |
| Estimated medical expenses | ---- | $411.00 total *$49.00 (blood work) $162.00 (medical appointments) $200.00 (misc.)* | ---- | $205.50 | $205.50 |
| Medical insurance | ---- | $401.00 | ---- | $401.00 | $0.00 |
| Prescriptions | ---- | $31.00 total *$10.00 (Mrs. Wise)- $21.00 (Mr. Wise)* | ---- | $31.00 | $0.00 |
| Estimated car payment | ---- | $350.00 | ---- | $175.00 | $175.00 |
| **Total Disallowed Amount:** | | | | | **$490.12** |

The Debtors listed on schedule J (doc. # 1), the following monthly expenses that are now in dispute: $425.00 on Line 2(d), for telephone, cable, and internet; $120.00 on Line 6, for laundry and dry cleaning; and $97.00 on Line 11(b), for life insurance (see Findings of Fact ¶ 15, supra). The United States Trustee asserts that these expenses are excessive, and that 50% of the amount of these expenses, or $321.00 per month, could be applied to pay general unsecured creditors (doc. # 27, pp. 17–18). The Debtors' amended budget shows average monthly expenses of $7,329.97, including $169.00 for telephone, cable, and internet expense, $270.00 for cell phone and business cell (including a $35.00 reimbursement), $120.00 for laundry and dry cleaning, and $97.08 for life insurance (Debtors' Ex. D).

At the evidentiary hearing, Mr. Wise testified that, although the Debtors had lowered the telephone, cable, and internet expense slightly in recent months, the driving force on that expense was the

internet expense, which he required for business purposes.  Mr. Wise further testified that his cell phone

and business cell expense averaged $270.00 per month after a $35.00 per month reimbursement from his

employer.  Mr. Wise further testified that the cell phone and business cell expense is so high because he

has a data plan, international roaming, and multiple cell phones, including cell phones for Mrs. Wise and

their son.  Mr. Wise testified that approximately $190.00 to $200.00 of the $270.00 expense is for his

business cell expense, less the $35.00 reimbursement.  The Court finds that Mr. Wise presented credible

and persuasive testimony in support of the $169.00 telephone, cable, and internet expense and for the

$270.00 cell phone and business cell expense listed on the Debtors' amended budget, and further finds

that the United States Trustee failed to elicit testimony demonstrating that the expenses were unreasonable

under the circumstances.

    However, the Debtors did not provide any response in their opposition papers in support of the

$120.00 laundry and dry cleaning expense or the $97.08 life insurance expense, and the Debtors did not

provide any exhibits or testimony at the evidentiary hearing in support of these two expense items.  The

Court therefore accepts the United States Trustee's suggestion that these expenses should be reduced by

50% and finds that the Debtors overstated the $120.00 laundry and dry cleaning expense by $60.00, and

have overstated the $97.08 life insurance expense by $48.58, for the purposes of computing the Debtors'

net disposable income in connection with the instant motion to dismiss.

    The other items in the Debtors' amended budget that require a downward adjustment for purposes

of this motion are those that the Debtors have estimated.  The first is for an estimated automobile expense.

The Debtors' amended budget shows an estimated car payment expense of $350.00 to replace their Jeep,

which was not listed on schedule J (Debtors' Ex. D).  In January 2011, the Debtors owned outright a 2000

Jeep, in addition to their Toyota, and needed both vehicles since one vehicle was for Mr. Wise's work-

related travel and the other was for Mrs. Wise's transportation needs associated with meeting household

and children's needs (see Findings of Fact ¶¶ 4, 17, supra).  Mr. Wise testified that the Jeep had required

significant repairs since moving to Vermont, and he determined it would be more cost effective to replace

it.  Mr. Wise testified that he sold the Jeep for $3,000.00 because of the condition of the vehicle, the cost

of repairing it, and the appearance of someone who was willing to pay $3,000.00 for it.  Mr. Wise further

testified that he now needed to apply the $3,000.00 toward the purchase of a second vehicle for the family,

which he would use for work travel.  Mr. Wise acknowledged that he currently has access to a vehicle

through his employer, but noted that this is a short-term arrangement and he is expected to be responsible

for his own transportation.  Mr. Wise testified that he had not yet applied for a car loan, but he believes he

will be able to obtain one, though it may require a co-signor.  The Court finds that Mr. Wise presented

credible and persuasive testimony in support of the need for a second vehicle, which is supported by the

stipulation between the Debtors and the United States Trustee, and is also persuaded of the legitimacy of the Debtors' intent to devote the $3,000.00 of Jeep proceeds to the purchase of that vehicle. However, the Court finds the $350.00 estimated car payment figure to be entirely speculative and will therefore allow an expense of only one-half that amount for the purposes of this motion.

The second category of expenses that includes estimated figures is the Debtors' medical expenses. The Debtors' amended budget shows an increase in prescription medicine expenses from $20.00 to $31.00 in 2011, additional estimated medical expenses for Mr. Wise totaling $411.00 not listed on schedule J ($49.00 for blood work six times per year, $162.00 for medical appointments six times per year, and $200.00 for miscellaneous medical treatments), and $401.00 for a medical insurance expense not listed on schedule J (Debtors' Ex. D). At the evidentiary hearing, Mr. Wise testified that the Debtors' medical expenses had changed post-petition. The Debtors provided a copy of two pharmacy receipts, which were admitted into evidence as part of Debtors' Exhibit B, showing $10.00 in prescription medicine expenses on January 21, 2011, and $25.01 in prescription medicine expenses on April 23, 2011 (Debtors' Ex. B, p. 1). Mr. Wise testified that the pharmacy receipts were typical of the Debtors' prescription medicine expenses, and that the Debtors included the pharmacy expenses and additional medical expenses on their amended budget. Mr. Wise further testified that he was diagnosed with rheumatoid arthritis post-petition, and that he anticipated he would incur the additional out-of-pocket medical expenses listed on the amended budget due to upon his medical condition and his medical provider's recommendations as to course of treatment. Mr. Wise testified that he has a $7,000.00 annual health insurance deductible supplemented by a $1,500.00 medical health savings account, the Debtors had already exhausted the $1,500.00 in funds in the account, and the amounts listed for medical expenses on the amended budget were expenses in excess of the $1,500.00 available in his medical health savings account. The Court finds that Mr. Wise presented credible and persuasive testimony in support of the $31.00 prescription medicine expenses. However, it finds the $411.00 in additional estimated medical expenses, based upon the post-petition diagnosis, to be speculative. Accordingly, the Court reduces that expense by 50% as well, for the purposes of this motion.

Although the U.S. Trustee has raised no objection to the Debtors' medical insurance expense, the Court addresses it here because it is a significant component of the Debtors' monthly expenses and was not included in the Debtors' original schedule J. Mr. Wise's weekly paystubs showed a pre-tax benefit for medical insurance in the amount of $92.55 (Debtors' Ex. C), and Mr. Wise testified that this was the only health insurance option his employer offers. The Court allows this expense as a reasonable and necessary expense for purposes of this motion.

The Debtors' amended budget shows an increase in rent from $2,000.00 to $2,019.08, a decrease

in electric utility from $130.00 to $125.00, and an increase in gas utility from $120.00 to $124.00 in 2011

(Debtors' Ex. D).  At the evidentiary hearing, Mr. Wise testified that the Debtors currently pay $2,018.00

in rent, and that the increase in rent from $2,000.00 was because the Debtors were responsible for all

utilities, including a monthly rental fee for the water heater.  The Debtors provided a copy of their original

rental agreement, which was admitted into evidence as Debtors' Exhibit A, showing that the Debtors were

responsible for the payment of all utilities, including the rental fee for the water heater (Debtors' Ex. A, p.

3).  Mr. Wise testified that the current rental agreement is substantively identical to the Debtors' original

lease, and the United States Trustee interposed no objection to that explanation for increased rental and

utility expenses.  With respect to the rent charge in general, Mr. Wise further testified that the Debtors had

diligently sought housing that would not exceed $1,500.00 per month, but were unable to find adequate

housing in that range during the two days the Debtors had to find housing.  In response to a question from

the United States Trustee, Mr. Wise testified that the Debtors could not afford to move from their current

residence, as they do not have the cash on hand to do so (see also Findings of Fact ¶ 8, supra).  With

respect to utilities, Mr. Wise testified that the Debtors averaged their utility bills and listed them on their

amended budget, and that the average monthly amounts listed on the amended budget were accurate.  The

Debtors provided a copy of a recent electric utility bill and a recent gas bill used when averaging their

utility bills, which were admitted into evidence as part of the Debtors' Exhibit B, showing current charges

of $151.63 for the electric utility as of April 15, 2011, and current charges of $101.71 for the gas utility as

of May 24, 2011 (Debtors' Ex. B, p. 2–3).  The Court notes that the United States Trustee has presented

no argument with respect to Mr. Wise's testimony on these expenses.  The Court finds that Mr. Wise

presented credible and persuasive testimony in support of the $125.00 electric utility expense and $124.00

gas utility expense listed on the Debtors' amended budget.  The Court further finds that, based upon Mr.

Wise's testimony in support of the rent in the amount of $2,018.00, the amount listed in the Debtors'

amended budget in the amount of $2,019.08 is overstated by $1.08.  Accordingly, the Court finds that the

$2,018.00 rent, $125.00 electric utility, and $124.00 gas utility expenses are reasonable and properly

included as part of the monthly expenses for purposes of this motion.

The Court found above that the Debtors have a monthly income of $7,179.08.  Although the

Debtors' amended budget shows average monthly expenses of $7,329.97 (Debtors' Ex. D), the Court

found above that the Debtors overstated reasonable monthly expenses by $490.12 ($60.00 for laundry and

dry cleaning, $48.54 for life insurance, $1.08 for rent, $205.50 for estimated medical expenses, and

$175.00 for estimated car payment) for the purposes of the instant motion.  Accordingly, the Debtors'

average monthly expenses are $6,839.85, resulting in net monthly income of $339.23 for the purposes of

this motion.  Accordingly, the Court finds that, under the first prong of the Kornfield test, the Debtors

have the ability to pay some dividend to their unsecured creditors.  If the Debtors were to pay this sum

into a plan over a 60-month period, it would generate $20,353.80.  Deducting 10% from that sum for the

maximum Trustee commission would net $18,318.42 available for distribution to the Debtors' creditors.

The Debtors list $241,275.00 in general unsecured debts on schedule F (doc. # 1).  The Debtors would

thus be able to pay general unsecured creditors a dividend of approximately 7.59%.  This does not

demonstrate that the Debtors are able to pay a substantial dollar amount or percentage of their unsecured

debts.  See In re Fitzgerald, 418 B.R. at 782, 784–85 (denying United States Trustee's motion to dismiss

where the debtor could only pay $18,900.00 or approximately 13% of general unsecured claims).

However, this is not the end of the inquiry.

      **B.**    *Are there Pertinent Mitigating or Aggravating Factors?*

      The Court next looks to "any other relevant circumstances to determine whether there were any

mitigating or aggravating factors."  Id. at 782.  The first set of potentially pertinent factors is "[w]hether

the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment," and

"[w]hether the debtor was forced into Chapter 7 by unforeseen or catastrophic events."  In re Carlton and

Kornfield, 211 B.R. at 478.  Here, a change in Mr. Wise's employment was the initiating factor for many

of the expenses leading to the Debtors' bankruptcy filing.  From 2006 to 2009, the Debtors' gross income

had decreased 62.6%, from $288,533.00 in 2006 to $108,016.00 in 2009 (see Findings of Fact ¶ 1, supra).

In March 2010, the Debtors relocated from California to Vermont in order to find employment; the

Debtors spent $17,000.00 in savings in connection with the move, and only $5,360.00 of the cost was

reimbursed (see Findings of Fact ¶¶ 5–6, supra).  When the Debtors arrived in Vermont, they had only one

weekend to find affordable housing, and the Debtors signed a one-year lease for a condominium with rent

slightly higher than is typical for the area, at $2,000.00 per month plus utilities (see Findings of Fact ¶ 8,

supra).  Thus, the Court finds that the Debtors filed their bankruptcy petition at least in part due to

unforeseen events relating to Mr. Wise's change in employment.

      The second set of relevant factors is "[w]hether the debtor incurred cash advances and made

consumer purchases far in excess of his ability to pay" and "[w]hether the debtor has engaged in 'eve of

bankruptcy purchases.'"  In re Carlton and Kornfield, 211 B.R. at 478.  Mr. Wise testified at the

evidentiary hearing that, since 2008, the Debtors had not incurred any new debt and had stopped using

their credit cards.  Mr. Wise further testified that, although the Debtors had previously incurred consumer

debt, it was debt they were able to afford prior to the change in his employment in 2008.  Accordingly, the

Court finds that the Debtors did not incur cash advances or make consumer purchases far in excess of

their ability to pay, and that the Debtors did not engage in eve of bankruptcy purchases.  In sum, those

potentially aggravating factors are inapplicable here.

The third set of relevant factors is "[w]hether the debtor enjoys a stable source of future income," "[w]hether the debtor is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code," and "[w]hether the debtor has significant retirement funds which could be voluntarily devoted in whole or in part to the payment of creditors." Id. Mr. Wise testified at the evidentiary hearing that he is currently employed by Heritage Aviation, and that he expects his employment to continue for the foreseeable future. Although the Court found above that the Debtors have monthly income of $7,179.08, the Court further found that the Debtors have net monthly income of only $339.23 for the purposes of this motion, and do not demonstrate an ability to pay a substantial dollar amount or percentage of their unsecured debts in a hypothetical Chapter 13 plan. Accordingly, while the Debtors enjoy a stable source of future income and are eligible for adjustment of their debts through Chapter13 as individuals with regular income, see 11 U.S.C. § 109(e), the Debtors have insufficient disposable income to pay creditors a substantial amount in a Chapter 13 case, and therefore this is not an aggravating factor.

Mr. Wise testified at the evidentiary hearing that he has $4,900.00–$5,000.00 in a 401(k) retirement savings account from prior employment. Mr. Wise's weekly paystubs from his current employer show a 401(k) year-to-date contribution for 2011 of $1,525.99, with no current contribution for the weeks of June 15, 2011 and June 22, 2011 (Debtors' Ex. C). Mr. Wise testified that his current employer had for a period of time mandated employee contributions, and that he ceased making contributions once the employer ceased mandating them because the Debtors needed the funds. The Court finds that, even if the Debtors' retirement savings of $6,525.99 ($5,000.00 plus $1,525.99) could be devoted to the payment of creditors, the amount is not significant enough to tip the scale in favor of dismissal.

The fourth and final set of relevant factors is "[w]hether the petition was filed in good faith," "[w]hether the debtor exhibited good faith and candor in filing his schedules and other documents," "[w]hether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities," and "[w]hether there is no other choice available to the debtor for working out his financial problems other than Chapter 7, and whether the debtor has explored or attempted other alternatives." In re Carlton and Kornfield, 211 B.R. at 478. Here, the Debtors have substantially changed their lifestyle in response to their diminished economic circumstances (see Findings of Fact ¶ 9, supra). In 2008, the Debtors traded in two vehicles and sold a third vehicle, and liquidated retirement savings to pay a $3,000.00 debt on the trade-in vehicles, in order to purchase a more affordable vehicle; by engaging in these transactions, the Debtors removed from their expenses car payments of $915.00 and $775.00 (see Findings of Fact ¶ 4, supra). The Debtors were also forced to abandon home ownership in California due to their reduction in income (see Findings of Fact ¶ 7, supra). As noted

14

above, Mr. Wise testified at the evidentiary hearing that the Debtors stopped using credit cards in 2008.

Moreover, the United States Trustee has not moved to dismiss the case on the basis that the petition was filed in bad faith (see doc. # 11, ¶ 42). Accordingly, the Court finds that the Debtors filed the petition in good faith, and none of the factors in this category constitute aggravating factors that would weigh in favor of granting the United States Trustee's motion.

Although the United States Trustee asserts that the Debtors manipulated their schedules by failing to list as income on schedule I approximately $640.00 per month for reimbursement of expenses (doc. # 11, ¶ 42), the Court found above that there had not been an actual increase in income of $640.00 per month. The Debtors listed among the deductions on their means test form (doc. # 1) and amended means test form (doc. # 15) the following: $496.00 on Line 24, for a vehicle that the Debtors owned outright and that had no lien or loan payment due; $2,967.00 on Line 42(a), attributable to the Debtors' mortgage payments on their residential property in California, which the Debtors disclosed as surrendered on their Statement of Intention; and $110.07 on Line 42(b), for a Yamaha ATV, which the Debtors disclosed as surrendered on their Statement of Intention (see Findings of Fact ¶ 12, supra). The United States Trustee asserts that the Debtors improperly claimed the three deductions, pursuant to Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716 (2011) (doc. # 11, ¶ 28; doc. # 27, pp. 11–13; doc. # 29, p. 4). However, the Debtors filed their petition prior to the Ransom decision, and there is no evidence that the Debtors exhibited bad faith or lack of candor when completing their means test form. Additionally, the Debtors provided at the evidentiary hearing a detailed budget showing the Debtors' change in monthly income and expenses for 2011, which was admitted into evidence (see Debtors' Ex. D). Thus, the Court likewise finds that the Debtors exhibited good faith and candor in filing their schedules and other documents.

The Debtors have already demonstrated a reduction in expenses pre-petition and in their amended budget (see Debtors' Ex. D), and the Court further reduced the Debtors' expenses for the purposes of this motion to dismiss when addressing the Debtors' ability to pay their creditors in a hypothetical Chapter 13 plan. Accordingly, the Court finds that the Debtors' expenses cannot further be reduced significantly without depriving them of adequate food, clothing, shelter, health care, and other necessities.

Another consideration is efforts the Debtor made to repay creditors without resorting to bankruptcy relief. Mr. Wise testified at the evidentiary hearing that he went to credit counseling. The Debtors did not consider filing for bankruptcy until it was suggested by a credit counselor at Consumer Credit Counseling of New Hampshire and Vermont in June 2010, which prompted the Debtors to consult an attorney (see Findings of Fact ¶ 10, supra). Mr. Wise testified that the Debtors considered both Chapter 7 and Chapter 13, but chose to file for relief under Chapter 7 based upon the recommendation of the credit counselor and the Debtors' assessment of their finances. The Court found above that the

15

Debtors have insufficient disposable income to pay creditors a substantial amount in a Chapter 13 case.
Accordingly, the Court finds that the Debtors have explored or attempted other alternatives, and that there is no other choice available to the Debtors for working out their financial problems other than Chapter 7.

In summary, the Court finds that the relevant factors suggest a number of mitigating circumstances that would warrant allowing the Debtors to remain in Chapter 7, and do not indicate aggravating factors sufficient to warrant a determination that granting the Debtors relief would constitute an abuse of Chapter 7 bankruptcy relief.

## CONCLUSION

For the reasons set forth above, the Court finds that the United States Trustee's motion to dismiss the Debtors' case as an abuse of Chapter 7 of the Bankruptcy Code under § 707(b)(1), based upon a presumption of abuse under § 707(b)(2), is time-barred.  The Court further finds that the United States Trustee has failed to demonstrate abuse based upon the totality of the circumstances, as required for relief under § 707(b)(3)(B).  Accordingly, the Court denies in toto the United States Trustee's motion to dismiss this case.

This memorandum constitutes the Court's findings of fact and conclusions of law.

July 25, 2011                                      Colleen A. Brown
Burlington, Vermont                               United States Bankruptcy Judge

16